SimoN, J.
The object of this action is to recover of the defendants, in solido, the sum of $811 50, which is alleged to be the balauce due on a note of $1000, drawn by one Saunders, to the order of Ann H. P. Noble, now Mrs. Lawson, endorsed by the latter, and protested for non-payment at maturity. Her husband Lawson is also sued as bound to pay said note, in solido, with his wife, on the allegation of his having promised to pay the same.
The defence is the general issue, and a special denial of any indebtedness on the part of the defendants to the plaintiff on the note sued on.
Judgment of nonsuit was rendered below in favor of the defendants, from which the plaintiff has appealed.
The note sued on is dated at New Orleans, 20th of June, 1839, *153 made payable twelvemonths after date, and was protested on the 23d of June, 1840. The certificate of notice of the notary who protested said note, states, that the parties thereto “ were duly notified of the protest thereof by letters to them written and addressed, dated the day of the protest, and served on them respectively this day, (24th of June,) to wit: notice to Ann H. P. Noble addressed to her at Vicksburg, Miss.” which he deposited in the post-office in New Orleans, on the day and date of the protest, &c.
The parol evidence on the subject of the existence of the nearest post-office to the defendant’s residence at the time the protest was made, is somewhat uncertain ; but it appears, however, that if the post-office at Young’s Point, which is about two miles from the defendant’s, was not in operation in June, 1840, the one at Milliken’s Bend, about seven miles and a half from her house, was then the nearest, since the post-office at Vicksburg is thirteen or fourteen miles distant from her residence. Several witnesses say however, that the post-office at Young’s Point, was established early in the year 1840, and one says, it was established in 1839. But it is clearly proved, by the testimony of one Boyd, that the defendant, Mrs. Lawson, from 1837 to 1842, was in the habit of receiving her letters at the post-office in Milliken’s Bend up to the year, 1839 : that subsequently to the year 1839, she was in the habit of receiving them at the post-office at Young’s Point; and that, had she been in the habit of receiving her letters at any other post-office, the witness would have been aware of it; witness was the defendant’s overseer during the year 1837, and subsequently to that period, and up to the year 1842, resided at the house of Mrs. Lawson.
But it is shown by the witness Jones, that having been employed by the defendant, as her agent in New Orleans for the sale of her plantation, she required him to forward any communications to her at Vicksburg, stating that she could get her letters sooner from there, than from any other post-office; and it appears from other depositions that, in 1840, some of the defendant’s neighbors used to get their letters from Vicksburg, and that letters were frequently gotten out of the latter post-office at that period for said defendant. All this maybe true, but Jones does not *154 state at what time she-gave him these instructions; it may have • been long previous to 1840 ; she might then have been living at Yicksburg ; or had particular reasons to desire her letters to be sent there ; and we are not ready to say, that the desire by her expressed to Jones conferred any authority to others to address her notices of protest to Yicksburg, Miss. If she took letters out of the post-office at Yicksburg, she was also in the habit, before 1839, of receiving them at the Milliken’s Bend post-office, and subsequently, she used to take them from the office at Young’s Point, and it can hardly be believed that she would get her letters sooner from Yicksburg, at a dislance of fourteen miles, than from Young’s Point, which is only two miles from her residence.
Under the evidence of the case, we think the notice is insufficient. Yicksburg was not the nearest post-office to her residence in June, 1840. 1 Rob. 107. 3 Ibid. 4, 242. Mead v. Bryce, 6 Ibid. 73. She was in the habit of receiving her letters at other post-offices in her neighborhood, in the parish where she resided in this State, and the notice was addressed to her at Yicksburg, Miss., where she did not reside. This last fact would be sufficient to consider said notice as bad, under the act of 1827, according to the jurisprudence of this court in the case of Duncan v. Sparrow, 3 Rob. 165, and in divers other cases since decided ; and it is clear, that the defendant Mrs. Lawson must be discharged.
But we have come to a different conclusion with regard to hex-husband and co-defendant. He was no party to the note sued on, but thought proper to interfere in the business, and to assume the payment of the obligation. In a letter written by him to his merchants in New Orleans, about a year after the note was protested, he informed them, that he would send them in a few days a draft of Robert Ford on Maunsel White & Co., for $1200 or $1500; and he adds: 11 Mr. Bell, holds a note on William Saunders, with Ann H. P. Noble endorser, which I have agreed to pay out of that draft; when you get the money on the draft, take up that note without the interest.” This must amount to a positive promise to pay the note, made in favor of a third person who, before it was revoked, had signified his assent to accept it by the institution of this suit, and we think the defendant *155 Lawson is bound by it. Civ. Code, art. 1896. It is true, it is not shown by positive evidence he was aware of the defect in the protest of the note. But why restrict its payment only to the principal ? If the protest had been regular, the interest was to run from its date; the letter was written nearly one year after said protest; it recites that he had previously agreed to pay the note ; and the law is well settled, that though it is required that a subsequent promise to pay a bill or note, should be made with full knowledge of the want of due diligence on the part of the holder, affirmative proof of such knowledge is not necessary; it may be inferred from the promise under the attending circumstances. 13 La. 421.
It is, therefore, ordered and decreed, that the judgment appealed from as to Ann H. P. Noble be affirmed, with costs ; but as to her husband and co-defendant Lawson, it is ordered and decreed, that said judgment be avoided and reversed, and that the plaintiff do recover of said Lawson, the sum of eight hundred and eight dollars, with legal interest, per annum, thereon, from judicial demand until paid, with one-half of the costs in the court below ; the costs in this court to be borne, one-half by said plaintiff, and the other half by said defendant Lawson.